*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and KORN
Appellate Military Judges

————————————

**UNITED STATES**
*Appellee*

**v.**

**Joseph D. SUAREZ**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202300049 (f rev)**

————————————

Decided: 28 July 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary
*upon further review following remand from*
*the United States Court of Appeals for the Armed Forces*

Military Judge:
Melanie J. Mann (Arraignment)
Cory M. Picton (Motions)
Stephen F. Keane (Motions)
Andrea C. Goode (Plea)

Sentence adjudged 18 October 2022 by a general court-martial tried at Marine Corps Base Hawaii. Sentence in the Entry of Judgment: reduction to E-1, confinement for 60 months, and a dishonorable discharge.[1]

————————————

[1] Appellant was credited with 280 days of pretrial confinement.

For Appellant:
*Lieutenant Colonel Todd Eslinger, USMC*
*Major Colin W. Hotard, USMC*
*Lieutenant Commander Alaric A. Piette, JAGC, USN*

For Appellee:
*Lieutenant Colonel Candace G. White, USMC*
*Lieutenant R. Blake Royall, JAGC, USN*

Judge KORN delivered the opinion of the Court, in which Chief Judge DALY and Senior Judge HARRELL joined.

———————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

KORN, Judge:

A military judge sitting alone as a general court-martial convicted Appellant, pursuant to his pleas, of five specifications of wrongful use, introduction, and distribution of controlled substances in violation of Article 112a, Uniform Code of Military Justice (UCMJ), and one specification of conspiracy to distribute cocaine in violation of Article 81, UCMJ.

Appellant's case is before this Court for the second time. We previously affirmed the findings and sentence.[2] The Court of Appeals for the Armed Forces (CAAF) concluded that we "applied incorrect legal principles and failed to address whether there was a reasonable probability that, but for counsel's errors, Appellant would not have pleaded guilty and would have insisted on going to trial."[3] The CAAF therefore set aside our decision and returned the case to the Judge Advocate General of the Navy for remand to this Court. We now again consider whether trial defense counsel's deficient performance was

---

[2] *United States v. Suarez*, No. NMCCA 202300049, 2024 CCA LEXIS 348 (N-M. Ct. Crim. App. Aug. 23, 2024) (unpublished).

[3] *United States v. Suarez*, 86 M.J. 65, 74 (C.A.A.F. 2025) (citation modified).

prejudicial. Applying the correct legal principles, we determine that it was not.[4]

## I. BACKGROUND

In 2021, multiple members from Appellant's unit tested positive for drugs—primarily cocaine—on urinalysis tests. The Naval Criminal Investigative Service (NCIS) identified Appellant as the source of the drugs. Appellant then tested positive for multiple drugs on a random urinalysis test. NCIS agents eventually apprehended Appellant in front of his entire battalion during an all-hands gathering. The battalion commander, Lieutenant Colonel (LtCol) W., said to the gathered Marines, "This is who's been dealing cocaine in my barracks."[5] Additionally, Sergeant Major (SgtMaj) C., the battalion sergeant major, told the Marines present, "this piece of s[***] drug kingpin has been selling drugs in your barracks and no one has the nut sack to say anything about it."[6] These comments and the circumstances of Appellant's apprehension formed the basis of a defense motion to dismiss for unlawful command influence (UCI).

Following the comments made by LtCol W. and SgtMaj C., the commanding general (CG) withheld disposition authority for Appellant's case from LtCol W. Additionally, the CG initiated an investigation into LtCol W. and SgtMaj C. based on their comments about Appellant and a related Inspector General complaint. The CG ultimately removed both LtCol W. and SgtMaj C. from their positions.

NCIS's investigation into Appellant's conduct revealed significant evidence of his involvement with narcotics, to include his own use, as well as his regular introduction of drugs onto two bases and distribution of drugs to servicemembers. The investigation also uncovered evidence that Appellant attempted to prostitute himself.

Following referral of charges to a general court-martial, Appellant filed a motion to dismiss the charges based on UCI. The military judge denied the motion, finding that despite Appellant presenting some evidence of UCI, the Government had proved beyond a reasonable doubt that actual UCI did not

---

[4] We also reaffirm our previous conclusions that: (1) Appellant waived any claim of unlawful command influence; (2) Appellant waived any claim that he was subjected to illegal pretrial punishment in violation of Article 13, UCMJ; and (3) even if not waived, Appellant is entitled to no relief on either ground.

[5] R. at 69.

[6] App. Ex. XXVII at 1.

affect the proceedings and that apparent UCI did not place an intolerable strain on the public's perception of military justice.[7] Nevertheless, as curative safeguards, the military judge ordered the convening authority (CA) to issue a directive encouraging members of the command to serve as witnesses in support of Appellant without any repercussions, authorized liberal defense voir dire of the members, and mandated that no member could come from Appellant's battalion.

Appellant ultimately decided to plead guilty. He signed a plea agreement requiring the CA to withdraw the charges of attempted prostitution and solicitation to distribute cocaine. The plea agreement authorized the military judge to sentence Appellant to confinement for between 24 and 60 months and required Appellant to waive all waivable motions. Appellant pleaded guilty pursuant to the plea agreement, acknowledging to the military judge his understanding of the waiver of all previously litigated motions, including the UCI motion.

On appeal, Appellant submitted a post-trial declaration, asserting that his counsel advised him that the guilty plea would not waive appellate review of UCI, and that he would not have pleaded guilty if it were not for this assurance.[8] He asserted that his counsel further advised him that if he were convicted of attempted prostitution, he may have to register as a sex offender, and that he pleaded guilty to avoid this consequence. Appellant's trial defense counsel submitted a post-trial declaration confirming that he told Appellant the UCI issue was not waivable and was preserved for appellate review.[9] He also submitted an affidavit confirming that he advised Appellant the attempted prostitution offense could be "considered as a sex offense" subjecting Appellant to mandatory sex offender registration.[10]

In our prior opinion, we reviewed Appellant's case, determining that, *inter alia*, Appellant waived the UCI issue, and although trial defense counsel's advice was deficient, he was not ineffective because Appellant suffered no prejudice.[11] The CAAF agreed that the UCI issue was waived, but set aside our de-

---

[7] App. Ex. XXVII at 2.

[8] Appellant's Decl. (29 Aug. 2023), Appellant's Mot. to Attach (22 Sep. 2023), App'x B.

[9] Decl. of Trial Defense Counsel (25 Aug. 2023), Appellant's Mot. to Attach (22 Sep. 2023), App'x A.

[10] Affidavit (1 Apr. 2024), App'x to Appellee's Resp. to Order to Produce Decl.

[11] *Suarez*, 2024 CCA LEXIS 348.

cision and returned the case so we could apply correct legal principles to determine whether Appellant was prejudiced by his counsel's deficient performance.[12]

## II. DISCUSSION

**A. Appellant suffered no prejudice from his counsel's deficient performance because there is not a reasonable probability that, but for counsel's errors, Appellant would have pleaded not guilty.**

*1. Standard of Review*

Appellate courts review ineffective assistance of counsel (IAC) claims de novo.[13] The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[14] In order to prevail on a claim of IAC, an appellant must demonstrate both that counsel's performance was deficient, and that the deficiency resulted in prejudice.[15] In order to show prejudice, an appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16] "That requires a substantial, not just conceivable, likelihood of a different result."[17]

"When an appellant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain."[18] Instead, "the appellant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[19] This is an objective test which we review de novo.[20]

---

[12] *Suarez*, 86 M.J. at 65.

[13] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018) (citing *United States v. Captain*, 75 M.J. 99, 102 (C.A.A.F. 2016)).

[14] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[15] *Strickland*, 466 U.S. at 678, 682–685.

[16] *Strickland*, 466 U.S. at 694.

[17] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation modified).

[18] *Lee v. United States*, 582 U.S. 357, 364 (2017) (citation modified).

[19] *Id.* at 364–65 (citation modified); *see also United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021); *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008).

[20] *Furth*, 81 M.J. at 117.

### 2. Analysis

In our initial review of Appellant's case, we found that counsel was deficient by advising Appellant that his guilty plea would not waive the UCI issue and that a conviction for attempted prostitution could require sex offender registration.[21] We reaffirm those findings here and turn to the second prong of the IAC analysis to review whether those deficiencies resulted in prejudice.

Appellant's post-trial declaration avows that he would not have pleaded guilty but for his counsel's deficient advice. However, "[s]tanding alone, an appellant's *post hoc* assertions about how he would have pleaded but for his attorney's deficiencies are not enough to establish prejudice."[22] We must also "look to contemporaneous evidence to substantiate an appellant's expressed preferences . . . because the appellant has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true."[23] Here, Appellant's assertions do not stand alone. Trial defense counsel's affidavit confirms that he advised Appellant the attempted prostitution offense could be "considered as a sex offense," subjecting Appellant to mandatory sex offender registration.[24] Therefore, trial defense counsel advised "that it was prudent to accept a plea agreement that would limit his risk to sex offender registration."[25]

Trial defense counsel also corroborated Appellant's reliance on the advice that a guilty plea would not waive UCI, stating "Prior to entering into the plea agreement, [Appellant] asked if the military judge's denial of the UCI motion would be reviewed on appeal. I advised [Appellant] that the UCI issue was preserved and would be reviewed."[26]

Appellant desired an outcome where he did not have to register as a sex offender. Appellant also wanted to preserve UCI for appellate review. Trial defense counsel's deficient advice on both issues influenced Appellant's deci-

---

[21] *Suarez,* 2024 CCA LEXIS 348 at *18, *20. We further found, and reaffirm here, that counsel was not deficient for failing to move for credit for illegal pretrial punishment in violation of Article 13, UCMJ.

[22] *Furth,* 81 M.J. at 117 (citation modified).

[23] *Id.* (citation modified).

[24] Affidavit (1 Apr. 2024), App'x to Appellee's Resp. to Order to Produce Decl.

[25] Affidavit (1 Apr. 2024), App'x to Appellee's Resp. to Order to Produce Decl.

[26] Decl. of Trial Defense Counsel (25 Aug. 2023), Appellant's Mot. to Attach (22 Sep. 2023), App'x A.

sion to enter into the plea agreement. It is plausible that but for counsel's deficient advice, Appellant could have negotiated a more favorable plea agreement. However, "the relevant question is not whether Appellant would have achieved a better result absent the erroneous advice but whether he would have chosen to plead guilty in the first place."[27]

Appellants face a difficult burden to demonstrate a reasonable probability that they would not have pleaded guilty but for the deficient advice of counsel. In *Furth*, for example, the CAAF found that the appellant failed to meet the prejudice standard despite his counsel erroneously advising him that if his pending resignation request was approved, any court-martial proceedings would be vacated.[28] After the resignation request was approved, instead of vacating the conviction, the CA in *Furth* approved the adjudged findings and sentence of the court-martial. Despite finding deficient advice, the CAAF found no prejudice because, among other factors, the plea agreement was favorable, the government's case was strong, and there were no compelling extenuating or mitigating circumstances that would have led to a lower sentence.[29]

Similar factors exist in Appellant's case. The evidence against Appellant was overwhelming, consisting of significant information from a variety of sources. The evidence demonstrated that Appellant spearheaded a brazen and conspicuous operation of dealing illegal narcotics to other servicemembers on base. Because of the extent of the charged misconduct, Appellant's plea agreement was highly favorable. The maximum potential confinement for the referred charges was 91 years. The plea agreement withdrew the attempted prostitution and solicitation to distribute cocaine charges and limited the potential confinement to a range of 24 to 60 months.[30] Therefore, by pleading guilty, Appellant avoided the potential of an additional 86 to 89 years of confinement. And finally, "the record reflects no compelling extenuating or mitigating circumstances in this case that would have resulted in a reduced sentence."[31]

Avoiding the possibility of sex offender registration and preserving appellate review of the UCI motion certainly factored into Appellant's decision to

---

[27] *Suarez*, 86 M.J. at 74 (citing *Lee*, 582 U.S. at 364).

[28] 81 M.J. at 114.

[29] *See also United States v. Bradley* 71 M.J. 13 (C.A.A.F. 2012) (finding that the Government's case was strong, and the plea agreement allowed the appellant to avoid a possible life sentence).

[30] The plea agreement required the military judge to sentence Appellant to a dishonorable discharge and reduction to E-1.

[31] *Furth,* 81 M.J. at 117.

plead guilty. But we do not believe they were the decisive factors, since even absent these issues, Appellant had significant incentive to plead guilty pursuant to a plea agreement.

Appellant's case is distinguishable from those where courts found a reasonable probability that an appellant would not have pleaded guilty but for the deficient advice of counsel. Those cases involved counsel wrongly advising that an undesirable consequence would *not* ensue from the guilty plea. In *Lee v. United States*, for example, the appellant's primary concern in deciding whether to plead guilty was avoiding deportation.[32] The defense counsel in *Lee* erroneously advised that a guilty plea would not result in deportation proceedings.[33] When the appellant found himself subject to mandatory deportation because of his conviction, he appealed, claiming IAC. The Supreme Court found, "[t]here is no question that deportation was the determinative issue in [the appellant's] decision whether to accept the plea deal,"[34] as "[the appellant] asked his attorney repeatedly whether there was any risk of deportation from the proceedings, and both [the appellant] and his attorney testified at the evidentiary hearing below that [the appellant] would have gone to trial if he had known about the deportation consequences."[35] The Supreme Court therefore held that there was a reasonable probability that the appellant would have pleaded not guilty to retain the possibility of avoiding deportation.[36]

Similarly, in *United States v. Rose*, the appellant's primary concern in deciding whether to plead guilty was avoiding the possibility of having to register as a sex offender.[37] The appellant agreed to plead guilty to some of the charges against him because his counsel erroneously assured him that he would not have to register based on his convictions. The appellant had communicated his concern about the possibility of sex offender registration to his counsel multiple times, received inaccurate advice about whether he would have to register, and testified that he would not have pleaded guilty had he known he would have to register. The CAAF found, therefore, that the appellant had demonstrated prejudice because there was a reasonable probability that he would have

---

[32] 582 U.S. at 361.

[33] *Id.*

[34] *Id.* at 369 (citation modified).

[35] *Id.*

[36] *Id.* at 371.

[37] 71 M.J. 138 (C.A.A.F. 2012).

pleaded not guilty to seek the possibility of an acquittal and avoiding sex of-fender registration.[38]

While there was a reasonable probability that the appellants in *Lee* and *Rose* would not have pleaded guilty but for the deficient advice of counsel, we cannot say the same about Appellant. In those cases, the appellants had key concerns—avoiding deportation or sex offender registration—which were the determinative factors in deciding whether to plead guilty. Accurate advice—that a guilty plea would result in the undesired outcome—would therefore have resulted in pleas of not guilty. No such situation existed in Appellant's case. Although he received erroneous advice on whether a conviction for attempted prostitution would require sex offender registration, unlike in *Lee* and *Rose*, his guilty plea did not result in the outcome he wanted to avoid. Additionally, although he erroneously believed his meritless UCI claim was preserved for appellate review, we do not believe that Appellant would have pleaded not guilty if properly advised that the UCI issue was waived.[39] That is because Appellant's guilty plea provided significant sentence protection in the face of an overwhelming Government case. We therefore conclude that there is not a reasonable probability that, but for counsel's errors, Appellant would have pleaded not guilty.

---

[38] *Id.* at 144.

[39] In *Bradley*, the CAAF found that the appellant failed to demonstrate a reasona-ble probability that he would not have pleaded guilty despite his counsel erroneously advising him that a motion to disqualify trial counsel would be preserved for appeal even if the appellant pleaded guilty. 71 M.J. at 13. The CAAF found that this advice was deficient but found no prejudice in part because, "When an appellant argues that counsel was ineffective for erroneously waiving a motion, it makes sense to deny the claim if the appellant would not be entitled to relief on the erroneously waived motion, because the accused cannot show he was harmed by not preserving the issue." *Id.* at 17. We reaffirm our determination from our previous review of Appellant's case that "while some evidence of UCI existed, the Government proved beyond a reasonable doubt that the UCI did not affect the proceedings." *Suarez,* 2024 CCA LEXIS 348 at *29. Therefore, because Appellant would not be entitled to relief on the erroneously waived motion, he cannot show he was harmed by not preserving the issue.

### III. CONCLUSION

After careful consideration in accordance with the CAAF's opinion, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[40]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[40] Articles 59 & 66, UCMJ.